IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08mj612 |
| | ) | |
| ROBERT JOHN JEFFERY | ) | **UNDER SEAL** |
| | ) | |
| Defendant. | ) | |

FILED AUG - 8 2008 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

The affiant, Janet I. Keller, being duly sworn on her oath, states:

### BACKGROUND OF AFFIANT

1. I am a Senior Special Agent with the Major Procurement Fraud Unit (MPFU), United States Army Criminal Investigation Command (USACIDC), located at Fort Belvoir, Virginia, and have been employed with USACIDC since August 1994. For the last year, I have been assigned as the Special Agent in Charge of the Kuwait Fraud Task Force (KFTF), Alexandria, Virginia, a multi-agency task force investigating primarily money laundering, bribery, and corruption cases arising from the Global War on Terror (GWOT). Prior to August 1994, I was a Special Agent with the Washington Field Office, Defense Criminal Investigative Service (DCIS), Department of Defense Inspector General (DoDIG), Arlington, Virginia, for approximately seven years.

2. As a criminal investigator for the U.S. Army and the Department of Defense (DoD), I have conducted and/or supervised numerous investigations into the U.S. military's worldwide procurement and logistics programs and violations of the United States Code, including fraud, bribery, conflict of interest, theft of Government property or funds, money laundering, false statements, false claims, and conspiracy. I have a Masters Degree in Criminal Justice with an

emphasis in white collar crime and fraud. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses.

## PURPOSE OF AFFIDAVIT

3. I make this Affidavit for the limited purpose of showing probable cause for criminal complaints and arrest warrants against Elias MAALOUF, Robert Everett YOUNG, and Robert John JEFFERY for violation of Title 18, United States Code, Section 371 (conspiracy to commit an offense against the United States, namely, conspiracy to steal a thing of value belonging to the United States in violation of Title 18, United States Code, Section 641). This Affidavit does not contain every fact I have learned during this investigation.

## BACKGROUND

4. Special Agents with USACIDC and DCIS are conducting a joint investigation into allegations that individuals utilized fraudulent documentation, specifically, a Memorandum For Record (MFR), to draw illegally JP-8 aviation fuel and DF-2 diesel fuel from the Victory Bulk Fuel Point (VBFP), Camp Liberty, Iraq, for subsequent sale on the black market in Iraq. This investigation is within the criminal law enforcement jurisdiction of USACIDC and DCIS. I am one of several USACIDC and DCIS Special Agents assigned to this investigation.

5. The information contained in this affidavit is based upon my personal knowledge, interviews of witnesses, review of documents and law enforcement databases, information communicated to me by other law enforcement personnel with knowledge of this investigation, information communicated to law enforcement by U.S. military personnel, and knowledge gained through training and work experience.

6. The VBFP is located on Cawvey Drive, Camp Liberty, Iraq. It is owned and

2

operated by the U.S. Army in support of Operation Iraqi Freedom and supplies JP-8 aviation fuel and DF-2 diesel fuel, which is also owned by the U.S. Army, to both military units and U.S. Government contractors operating in and around the Victory Base Complex, Baghdad, Iraq. The VBFP is a major storage and supply point for fuel and is vital for the combined military operations within Iraq. Fuel is dispersed daily from the VBFP and it is a 24-hour operation. The VPFP has been under the control of the U.S. Army, 62nd Quartermaster Company, 553rd Combat Sustainment Support Battalion (CSSB), Camp Liberty, Iraq, since January 21, 2008. In order to gain access to the VBFP, a U.S. contractor is required to present a valid Common Access Card (CAC card), which can be obtained by presenting a valid Contractor Letter of Authorization (CLOA) to the CAC Card Section, and then signing a DD Form 2842 (Department of Defense Public Key Infrastructure Certificate of Acceptance and Acknowledgement of Responsibilities), certifying that the CAC card is the property of the U.S. government and is only to be used for official purposes.

7. Only authorized U.S. Government contractors with a valid signed MFR and a related Letter of Technical Direction (LOTD) are authorized by regulation to draw fuel from the VBFP. Each LOTD is assigned a unique tracking number and is written in standard memorandum format. A U.S. Government contractor must have a valid need for a specified quantity of fuel, for a specified time period, based on work being completed under a current U.S. Government contract. To begin drawing fuel from the VBFP, a U.S. contractor is required to present to the fuel point a valid MFR issued by the U.S. Army Garrison, Camp Victory, Iraq, and a related LOTD (in memorandum format similar to the MFR from the Garrison) issued by the Defense Contract Management Agency (DCMA), authorizing fuel withdrawals. The U.S. contractor must also sign the Daily Issues of Petroleum Products log and indicate his/her employer on the log each time he/she draws fuel.

3

8. Through my investigation and based on my conversations with USACIDC and DCIS Special Agents (the "case agents") assigned to this case, I believe that between approximately June 1, 2007, and May 30, 2008, MAALOUF, YOUNG, JEFFERY, Lee William Dubois and other co-conspirators purportedly representing DoD contractors stole from the United States 3,497,689 gallons of JP-8 fuel, valued at $4.06 per gallon, and 6,972,964 gallons of DF-2 fuel, valued at $3.65 per gallon, for a total value of approximately $39,651,936.00 based on false documents presented to VBFP.

## INVESTIGATION AND FACTS SUPPORTING PROBABLE CAUSE FOR ARREST

9. Based on my conversations with USACIDC Special Agent Robert Knight, who reviewed relevant documentation in this case and conducted interviews in Iraq, I believe that on January 22, 2008, JEFFERY presented a CLOA, dated December 17, 2007, to the CAC Card Section, S-1, 7th Sustainment Brigade, COB Adder, Tallil, Iraq, to obtain a CAC card, authorizing access to U.S. Army facilities in Iraq and specified installation privileges. According to Special Agent Knight, the CLOA falsely identified JEFFERY as a transportation coordinator for Future Services General Trading and Contracting Company (FS) working in Iraq under U.S. Army contract numbers W91GXE-07-M-0502 (0502) and W91GDW-07-A-0017 (0017). FS was the prime contractor for both contracts. As further detailed below in paragraph 19, JEFFERY was never an employee of FS. The signature on the CLOA was purportedly that of SFC Irvin G. Bonus, Contracting Officer, Regional Contracting Center (RCC), Tallil, Iraq. Bonus, however, confirmed in an interview conducted by DCIS Special Agents on June 19, 2008, that he had not been in Iraq when the CLOA was generated and that he did not author the CLOA. Bonus stated that he returned to Hawaii in October 2007, where he retired from the U.S. Army in May 2008. Special Agent Knight reviewed the documentation relating to the issuance of the CAC card to JEFFERY on January 22, 2008, and

determined that JEFFERY appeared to have signed a DD Form 2842. JEFFERY's identification information and his alleged employer were handwritten at the top of the form. By signing and dating the form, JEFFERY acknowledged that the CAC card was the property of the U.S. government and that it was to be used only for official purposes.

10. Special Agent Knight retrieved an MFR, dated September 16, 2007, issued on behalf of DoD contractor CH2M HILL, from the files of VBFP. According to Special Agent Knight and as further detailed below, the document falsely authorized six personnel, including three escorts and three drivers from CH2M HILL, to receive up to 44,000 gallons of DF-2 fuel per day allegedly for work under U.S. Air Force contract number FA3002-06-D-0002, Task Order 0101 (TO 0101), in support of equipment for Red Horse construction projects for the U.S. Air Force throughout Iraq. The three escorts authorized in the MFR to draw fuel were Alfredo Aguilar, Laith Al-Obaidi, and YOUNG, alleged employees of FS working on the subcontract between CH2M HILL and FS under TO 0101. The MFR was issued and signed by Major John D. Barrio, U.S. Air Force, Lead Administrative Contracting Officer, utilizing stationary purportedly from the "DEFENSE CONTRACT MANAGEMENT AGENCY IRAQ, MNCI AMC LOGCAP, C MAIN Unit 91400, APO AE 09342." The MFR also listed Major Barrio as the point of contact at DCMA Middle East.

11. On April 29, 2008, Special Agent Knight spoke with the Officer in Charge, Detachment 7, 557 Expeditionary Red Horse Squadron, Baghdad International Airport, concerning government contracts supporting Red Horse. According to Special Agent Knight, the Officer in Charge verified that there were no projects for Red Horse that required large quantities of bulk fuel. In addition, the Officer in Charge did not recognize the contractor employees listed on the MFRs submitted to the VBFP on behalf of FS, a purported subcontractor to General Dynamics ("GD") in support of Red

5

Horse under U.S. Air Force contract numbers FA3002-02-D-0002 (0002) and FA3002-08-D-0006 (0006). On June 19, 2008, Helen Morgan-Sanchez, the responsible contracting officer at Randolph Air Force Base, TX, indicated that (1) 0002 was not a valid contract, (2) no task orders had been issued under 0006, and (3) GD was not an approved offeror under 0006.

12. Special Agent Knight retrieved from the files of the VBFP an MFR, dated December 27, 2007, issued on behalf of FS. According to Special Agent Knight, the document authorized five personnel, including two escorts and three drivers from FS, to receive up to 30,000 gallons of JP-8 fuel per day for work allegedly under U.S. Army contract number W91GXE-07-L-0045 (0045) for equipment in support of the 407 Expeditionary Civil Engineer Squadron (407th ECES) for the U.S. Air Force throughout Iraq. FS was the prime contractor under 0045. JEFFERY was one of the escorts authorized to draw fuel under the MFR. The MFR indicated that it was issued and signed by Major Daniel Ortiz, U.S. Army, Contracting Officer and Lead Administrative Contracting Officer, on letterhead stationary purportedly from the "DEFENSE CONTRACT MANAGEMENT AGENCY IRAQ, MNCI AMC LOGCAP, C MAIN Unit 91400, APO AE 09342." Major Daniel Ortiz, U.S. Army, DCMA Middle East, at e-mail address, daniel.********@us.army.mil, was identified in the MFR as the point of contact.

13. On April 28, 2008, case agents spoke to Major Jorge Bennett, U.S. Air Force Contracting Officer, Southern Iraq, DCMA, Camp Slayer, Iraq, APO AE 09342. According to the case agents, Major Bennett stated his office was responsible for the issuance of all LOTDs authorizing U.S. contractors to draw fuel based on a contractual need from the VBFP. Major Bennett stated that each LOTD issued was assigned a specific number and a copy was kept on file at his office. Major Bennett examined the MFR, dated December 27, 2007, submitted to the VBFP for work by FS under 0045, and determined that it was fraudulent and had not been prepared by his

office. Major Bennett stated specifically that the MFR was not written in the proper format utilized by DCMA for LOTDs and did not contain the signature block of anyone assigned to Major Bennett's office. Major Bennett verified that all actual LOTDs were written and signed by personnel who worked in his office. Major Bennett further stated that Daniel Ortiz was not assigned and/or employed in his office in Iraq, and that he did not know Daniel Ortiz.

14. According to Special Agent Knight, on May 7, 2008, Special Agents assigned to the 68th Military Police Detachment (CID), Tallil, Iraq, told him that the CLOA submitted in the name of JEFFERY on January 22, 2008, identified JEFFERY as a FS employee working in Iraq under U.S. Army contract numbers 0502 and 0017. U.S. government contracting personnel responsible for administering contracts 0502 and 0017 informed Special Agent Knight that contract 0502 was for the construction of temporary lodging at Camp Bucca, Iraq, and there was no mention of bulk fuel requirements in the contract. The case agents informed me that 0017 was a Blanket Purchase Agreement (BPA) with FS, but no calls had ever been placed against it. The BPA was canceled in February 2008, without any work having been performed by FS. For this reason alone, I believe that the CLOA submitted in JEFFERY's name on January 22, 2008, is false.

15. Between May 1, 2008 and May 16, 2008, the case agents conducted surveillance of VBFP. According to the case agents, they observed JEFFERY escort into the VBFP fuel trucks driven by unidentified individuals and then draw JP-8 and DF-2 diesel fuel. After drawing the fuel and leaving the VBFP, JEFFERY would escort the fuel trucks off the military installation to the same location on each occasion, where he and the fuel truck drivers would meet several unidentified individuals. JEFFERY would allow these individuals to take custody of the trucks and drive them, unescorted, onto Route Irish toward downtown Baghdad to dispose of the fuel. Fuel trucks

officially entering Route Irish or traveling outside of U.S. military installations in or around Baghdad are forbidden to travel without a military escort.

16. On May 11, 2008, case agents spoke with SFC Barney Perez, U.S. Army, Non-Commissioned Officer in Charge (NCOIC), VBFP, Camp Liberty, Iraq, who stated that an individual, who identified himself as Lee William Dubois, had recently come to Perez' office at the VBFP. Dubois stated he was a representative of FS and provided SFC Perez with an MFR, dated March 29, 2008, authorizing an additional purported employee of FS to draw 11,500 gallons of DF-2 diesel fuel per day from the VBFP under 0045. The MFR presented by Dubois looked virtually identical to the false MFR, dated December 27, 2007, previously presented to VBFP under 0045, and also identified Major Ortiz as the primary point of contact for DCMA. Thus, for these reasons and those specified above in paragraphs 12 through 14, I believe the March 29, 2008, MFR is false.

17. On May 16, 2008, the case agents saw four fuel trucks, reportedly from FS and escorted by JEFFERY, draw 30,005 gallons of JP-8 fuel and 11,500 gallons of DF-2 fuel from the VBFP. The fuel was drawn under the false MFR, dated December 27, 2007, for JP-8 fuel and the false MFR, dated March 29, 2008, for DF-2 fuel, which Dubois had previously presented to the VBFP in furtherance of the conspiracy by MAALOUF, YOUNG, JEFFERY, Dubois and other co-conspirators to steal fuel from the U.S. government. The Daily Issues of Petroleum Products log kept by the VBFP appeared to be signed by JEFFERY, who was falsely listed as a representative of FS.

18. According to Special Agent Knight, who spoke to witnesses and reviewed the relevant documentation, from May 19 through 23, 2008, fuel trucks, reportedly from FS and escorted by JEFFERY, drew large quantities of additional JP-8 and DF-2 fuel from the VBFP. The fuel was drawn under the false MFR, dated December 27, 2007, for JP-8 fuel and the false MFR, dated

March 29, 2008, for DF-2 fuel, which Dubois had presented to the VBFP in furtherance of the conspiracy. The Daily Issues of Petroleum Products log kept by the VBFP appeared to be signed by JEFFERY, who was listed as a representative of FS, for each of these fuel draws.

19. On June 7, 2008, the case agents spoke with Sami Zeidan, General Manager of FS, who verified that JEFFERY and YOUNG were never employed by FS. He also verified that Dubois and MAALOUF were hired by FS as representatives in Iraq for new projects in September 2007. Zeidan told the agents that toward the end of February 2008, MAALOUF informed Zeidan that Dubois had returned to the United States. In fact, Dubois later told the case agents that he was still in Iraq working with MAALOUF at that time. On March 1, 2008, Zeidan formally terminated Dubois' employment with FS. Thus, I believe that all documentation listing JEFFERY or YOUNG as FS employees is false and all documentation listing Dubois as a FS employee after March 1, 2008, is false.

20. On July 16, 2008, case agents conducted a non-custodial interview of Alfredo Aguilar (aka "Bong"), who was listed as an escort in the fraudulent MFR, dated September 16, 2007. Aguilar admitted that he escorted fuel trucks four to five times as part of the scheme in January 2008. Aguilar also admitted to using a fraudulent CLOA, provided by YOUNG, to obtain a CAC card, which he then used to escort the fuel trucks onto VBFP to steal fuel. Aguilar stated that although the fraudulent CLOA indicated he was an employee of FS, he was, in fact, never employed by FS.

21. I believe that the following email records obtained pursuant to a search warrant on June 27, 2008, relating to Dubois' user account with Google, Inc. under dub******@gmail.com reveal an ongoing conspiracy by MAALOUF, YOUNG, JEFFERY, Dubois and other co-conspirators to steal fuel from the U.S. government.

9

a. In a series of emails that began on May 18, 2008 between YOUNG, MAALOUF, Dubois and JEFFERY, YOUNG detailed "payouts and costs" for salaries for the drivers and escorts involved in the fuel thefts and living expenses for the participants in the scheme. In an email sent on May 18, 2008, at 12:58 a.m., YOUNG, using his account with AOL under rey******@aol.com, wrote to MAALOUF, Dubois, and JEFFERY:

> D [Dubois] as you're the man controlling the cash, here is a list of bills to pay at the first of the month; Please insure daily cash is hand counted, S uses a money counting machine and mistakes happen 2-3 x a week. If a shortage is noted, S makes it up immediately. Salaries: J [JEFFERY] is at 25K monthly he likes it split evenly in 2 payments 1-at the 15th of the month, the 2nd on the 30th $25,000 I also told j that we would bring up to 30k in June, - the same as bong [Aguilar] used to get for 1 truck. Nepali drivers – all 9 including the mechanic receive $1500 on the first of the month $13,500. Trailers we have 5 full trailers at $3500 each, ½ trailer (#10) at $1750 $19,250. Parking lot !5K $15,000 We should not be paying for L's [Laith Al-Obaidi] 3 Napalis or their trailer, also as we have stopped using the global side they get squat from us, Sohib and L get to deal with them We haven't been using satco security or the small truck, once again L may trty and charge you for each. J J – stateside – 15k $15,000 All in all, approximately $87,500. The money i gave j previously was a severance and return travel costs in advance, as we didn't know from day to day what was up.

Later that same day, MAALOUF, using his account with MSN Hotmail under ema********@hotmail.com, responded at 4:13 p.m.: "I agree with all below messages w/ couple exceptions. I did the trsfr of 15k to J last week and have the support."

b. On May 23, 2008, at 9:38 a.m., YOUNG wrote in an email to JEFFERY, MAALOUF, and Dubois:

> D went to a lot of trouble and effort to get badges so we can use the dod properly . . . . E [MAALOUF], take a chunk out of L and S's ass. this is [expletive]. Your immediate attention is urgently needed. Once again the assholes in sheets are getting ready to [expletive] up the future of what we are doing. I dont see any reason or way we can expand our contracts as you suggest, who makes the money FS, or m's contract. Why is the FS contract constantly being shorted and not getting our pre agreed upon trks. D stuck his [expletive] in the wringer to geth the badges and DF contract moving, M gets all hs trks, and L runs pirate opns with the small one. WTF.

22. On July 18, 2008, Dubois was arrested by USACIDC and DCIS Special Agents at Dulles International Airport. The Honorable Thomas Rawles Jones, Jr., U.S. Magistrate Judge for the Eastern District of Virginia, authorized a criminal complaint later that same day. After the arrest, the agents advised Dubois of his rights, which he waived. Dubois then confessed to conspiring with JEFFERY, MAALOUF, Aguilar, Laith Al-Obaidi, and YOUNG to draw fuel illegally from VBFP for subsequent sale on the black market. Dubois estimated that he and YOUNG each made approximately $800,000 from the fuel thefts. Dubois also stated that of his $800,000, approximately $350,000 was in an account in Kuwait controlled by MAALOUF, and $150,000 had been deposited in Dubois' name in a Lebanese bank. Dubois also estimated that JEFFERY made approximately $100,000 to $150,000 for escorting the fuel trucks. Dubois explained that MAALOUF initially introduced him into the fuel theft scheme as an escort for the fuel trucks, but once JEFFERY assumed those duties in late January 2008, Dubois continued to be paid for his assistance in obtaining the fraudulent CAC cards and to ensure his silence about the ongoing thefts.

## CONCLUSION

23. Based on the foregoing facts, there is probable cause to believe that, among other laws, MAALOUF, YOUNG, and JEFFERY have violated 18 U.S.C. Section 371 (conspiracy to commit an offense against the United States, namely, conspiracy to steal a thing of value belonging to the United States in violation of Title 18, United States Code, Section 641) by conspiring to steal fuel from the United States.

24. On the morning of July 18, 2008, Dubois was arrested at Dulles Airport in the Eastern District of Virginia, upon arriving on an international flight. Title 18, United States Code, Section 3238 provides that the "trial of all offenses begun or committed . . . out of the jurisdiction of any

particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought . . . ." Accordingly, this Court has jurisdiction and venue over this case.

_____
Special Agent Janet I. Keller
U.S. Army Criminal Investigation Command

Sworn to and subscribed before me on the __8th__ day of August 2008.

_____/s/_____
John F. Anderson
United States Magistrate Judge